# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| PAUL J. RENARD,<br><br>                Petitioner,<br>v.<br><br>AMERIPRISE FINANCIAL SERVICES, INC.,<br><br>                Respondent. | Case No. 13-CV-555-JPS<br><br>ORDER |

        On April 29, 2013, petitioner Paul J. Renard ("Renard") commenced a civil action against respondent Ameriprise Financial Services, Inc. ("Ameriprise") in Milwaukee County Circuit Court by filing a petition to vacate an arbitration award pursuant to Wisconsin Statute § 788.10, and for judgment notwithstanding the arbitration award pursuant to Wisconsin Statute § 805.14(5)(b). (Docket #1-1). On May 16, 2013, Ameriprise removed the action to federal court. (Docket #1). This matter comes before the court on dueling motions: Ameriprise moves to confirm the arbitration award, and Renard moves to vacate the award. (Dockets #7, #14). Also pending is a Rule 7(h) expedited non-dispositive motion to supplement the record, filed by Ameriprise. (Docket #31). Briefing on the motions is completed and the matter is ready for adjudication.

1.    Facts

        The following facts are undisputed. Ameriprise is a financial brokerage firm. In a franchise agreement dated August 6, 2009 ("Franchise Agreement"), Renard affiliated with Ameriprise as an independent financial advisor. (Docket #1-1). Between August 2009 and March 2011, Ameriprise and Renard executed at least four promissory notes; Ameriprise characterizes these promissory notes as "loans," while Renard describes them as "performance based bonuses."

Renard received from Ameriprise a Notice of Special Regulatory Supervision ("Notice of Supervision") dated May 11, 2011. The Notice of Supervision stated that the firm received a complaint alleging that a client was solicited to purchase Electronic Transfer Funds ("ETF's")[1] which were unsuitable and resulted in a financial loss. The Notice of Supervision further informed Renard that Ameriprise initiated an investigation, and that Ameriprise placed Renard under special supervision as a result of the ongoing review.

On June 22, 2011, Ameriprise issued a Notice of Immediate Termination for Cause ("Notice of Termination") in which it stated that an investigation into Renard's practice found Renard in breach of the Franchise Agreement due to several violations, including soliciting purchases in various leveraged and inverse ETF's, and submitting client orders marked as unsolicited when the orders were, in fact, solicited. As a result of the termination, the unpaid balances on the promissory notes became immediately due and owing to Ameriprise. When Renard did not satisfy the notes, Ameriprise filed an arbitration claim with the Financial Industry Regulatory Authority ("FINRA") Dispute Resolution requesting damages totaling $529,539.27. Renard filed counterclaims asserting: a violation of the Wisconsin Fair Dealership Law ("WFDL"), breach of contract, interference with contractual relationships, interference with prospective advantage,

---

[1] The Franchise Agreement memorializes a requirement that Renard comply with standards set forth in Ameriprise's Manuals, one of which is the Regulatory Information Center ("RIC"). RIC Section 21.2.2a provides, "Due to inherent risk and complexity, Ameriprise Financial does not permit its registered representatives to make recommendations concerning certain investment instruments. The following instruments may not be recommended (solicited) for purchase: Leveraged or inverse ETF's…."

conversion, and misrepresentation; Renard sought damages in the amount of $16,200,000.00. A three-person arbitration panel conducted a three-day evidentiary hearing in April of 2013. The panel found Renard liable for $448,200.00 in compensatory damages, and dismissed Renard's counterclaims outright. The panel also specified each party's liability for arbitration fees, and denied with prejudice each party's request for attorneys' fees.

In his petition, Renard does not oppose confirmation of the arbitration award as it relates to the promissory notes and attorneys' fees. Rather, he argues that the award should be vacated as to its resolution of his WFDL and intentional tort counterclaims, and that the court should determine and award punitive damages.

2.  Choice of Law

The parties dispute which law governs their case: Renard maintains that the Wisconsin Arbitration Act ("WAA"), Wis. Stats. Ch. 788, governs, while Ameriprise asserts that the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et. seq.*, applies. (Docket #15 at 3-7; Docket #8 at 6-7). A comparison of the WAA and FAA reveals no substantive textual differences. Indeed, as the Seventh Circuit noted, the language of the WAA and FAA are "virtually identical." *Flexible Mfg. Systems Pty. Ltd. v. Super Products Corp.*, 87 F.3d 96, 99 (7th Cir. 1996). Both statutes explicitly empower a court to vacate an arbitration award in any of the following four instances: (1) if the award was procured by corruption, fraud, or undue means; (2) if there was evident partiality or corruption on the part of one or more arbitrators; (3) if the arbitrators committed misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear material evidence, or committed other misconduct that prejudiced the rights of a party; or (4) if the arbitrators

exceeded their powers or did not execute a mutual, final, and definite resolution of the issue. *See* 9 U.S.C. § 10(a); Wis. Stats. § 788.10. The text of the statutes being the same, Renard's argument focuses on judicial gloss; according to Renard, choice of law is important in this case because, in addition to the four instances articulated in the WAA, Wisconsin courts have held that a court may vacate an arbitration award upon a showing of "manifest disregard of the law." (Docket #15 at 17-19). Ameriprise responds, in part, that the Franchise Agreement requires application of the FAA, which in the Seventh Circuit is read to have a very narrow "manifest disregard" standard. (Docket #27 at 9).

The parties are correct that the WAA and FAA take different approaches to the manifest disregard standard. As recently as 2010, the Wisconsin Supreme Court articulated manifest disregard as a ground for vacating an arbitration award. *Sands v. Menard, Inc.*, 787 N.W.2d 384, 397 (Wis. 2010) (a court may vacate the award if the arbitration panel "engages in perverse misconstruction or positive misconduct, when the panel manifestly disregards the law, or when the award itself is illegal or violates strong public policy."). In Wisconsin, an arbitrator manifestly disregards the law if the decision is not supported by law. Stated differently, "[a]n arbitrator cannot be said to have manifestly disregarded the law if substantial authority sustains the arbitrator." *Madison Landfills, Inc. v. Libby Landfill Negotiating Comm.*, 524 N.W.2d 883, 892 (Wis. 1994) (citations). In contrast, the Seventh Circuit held, nearly twenty years ago, that the "grounds for setting aside arbitration awards are exhaustively stated in" the FAA, and, accordingly, courts may not set aside an arbitration award upon the finding of a manifest disregard of the law. *Baravati v. Josephthal, Lyon & Ross, Inc.*, 28 F.3d 704, 706 (7th Cir. 1994). Instead, under the FAA in the Seventh Circuit, manifest

disregard of the law is only shown where the arbitrators exceed their powers and "direct the parties to violate the law." *Wise v. Wachovia Securities, LLC*, 450 F.3d 265, 269 (7th Cir. 2006) (*quoting George Watts & Son, Inc. v. Tiffany & Co.*, 248 F.3d 577, 580 (7th Cir. 2001)) (further citations omitted). As explained below, the parties' exhaustive briefing on the WAA manifest disregard of the law standard really amounts to a tempest in a teapot; as Ameriprise shows, the Franchise Agreement governing the parties' relationship specifies that the FAA governs the parties' dispute resolution via arbitration, and the court will thus consider Renard's petition under the federal law.

For direction as to choice of law, the court looks first to the Franchise Agreement. *See Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 58 (1995); *Green v. U.S. Cash Advance Illinois, LLC*, 724 F.3d 787, 793 (7th Cir. 2013) ("Arbitration is at bottom a matter of contract.") (collecting cases). The Franchise Agreement contains reference to three bodies of law: Minnesota, Wisconsin, and Federal. First, section 26A of the Franchise Agreement, which falls under the title "Applicable Law," states that the Agreement "shall be interpreted and construed exclusively under the laws of the State of Minnesota." Specifically exempted from this statement, however, are "all issues relating to arbitrability or the enforcement of this agreement to arbitrate," which the contract provides will be governed by the terms set forth in the Franchise Agreement and by the rules of arbitration of FINRA. Second, the Arbitration Section of the Franchise Agreement memorializes an agreement to submit "any dispute, claim or controversy" between Renard and Ameriprise to resolution via arbitration and sets forth several procedures governing such arbitrations, including: "This Agreement to arbitrate is governed by and enforceable under the terms of the Federal Arbitration Act." And finally, the parties executed a "State Addenda" to the Franchise

Agreement with provisions that may supercede portions of the Franchise Agreement; with regard to agreements governed by Wisconsin law, the Addenda provides that the WFDL supercedes any inconsistent provision of the Franchise Agreement.

Ameriprise maintains, and the court agrees, that the Franchise Agreement memorializes the parties' choice of law regarding arbitration, and that choice is the FAA. Renard's argument in favor of applying the WAA is three-fold: first, that the FAA is limited to arbitration awards that raise a federal question; second, that the parties chose for their award to be enforceable under Wisconsin law when they conducted the arbitration in Wisconsin; and third, that application of the FAA circumvents the WFDL. (Docket #15 at 3-7). The court addresses each argument in turn.

Renard's first argument is plainly wrong as a matter of law. Renard cites a case from the Seventh Circuit, *Lander Co., Inc. v. MMP Investments, Inc.*, for support that "the FAA is limited to those arbitration agreements or awards that raise a federal question." (Docket #15 at 3). However, *Lander Co.* actually explains that "the Federal Arbitration Act is limited to arbitration agreements or award that arise out of disputes that could be litigated in federal court." 107 F.3d 476, 479 (7th Cir. 1997). The category of "disputes that could be litigated in federal court" encompasses more than just cases raising a federal question, and includes cases in federal court on diversity jurisdiction, such as the present case; Renard's characterization of the case as holding that a federal question is required is incorrect. *See also Wise,* 450 F.3d at 266 ("But the [FAA] confers federal jurisdiction in cases involving arbitration only of disputes that, were they litigated rather than arbitrated, would be within federal jurisdiction.").

Renard's second argument is equally unavailing; he argues that the parties chose to have Wisconsin law govern the enforcement of the arbitration award when they chose to conduct the arbitration hearing in Wisconsin. (Docket #15 at 4). For support, Renard relies on *Madison Beauty Supply, LTD. v. Helene Curtis, Inc.*, 167 Wis.2d 237 (Wis. Ct. App. 1992); this reliance is misplaced. There, the Wisconsin Court of Appeals determined that the WAA governed the enforcement of an agreement to arbitrate because the parties "elected" to proceed in a Wisconsin circuit court under the WAA. 167 Wis.2d 237, 245. The court's analysis is a bit puzzling—can it really be said that the defendants "elected" anything by the plaintiff's filing?—and it has received some criticism. Michael A. Bowen, Brian E. Butler, Cassandra H. McCauley & Joseph P. Wright, *The Wisconsin Fair Dealership Law* § 10.6 (4th Ed. 2012) ("[I]t is not clear what the court meant by this comment, unless it was referring to the defendants' failure to remove the case to federal court after the plaintiff had filed it."). In any event, *Madison Beauty Supply* is distinguishable because here, Ameriprise immediately removed the action to federal court and has vociferously contested the application of Wisconsin Law; in light of these facts, the court will not conclude that Ameriprise "elected" review under Wisconsin law. Additionally, *Madison Beauty Supply* leaves Renard further unassisted in that it turns on the judicial forum in which the parties contested the arbitration and does not consider the location of the *arbitration* in the choice of law analysis; in that case, the parties' contract required the parties to hold the arbitration in Illinois, but the Wisconsin court does not consider applying Illinois law. *Id.* at 240. Renard also cites *Volt Info. Sciences v. Stanford Univ.*, 489 U.S. 468 (1989), for support that "the procedure for enforcing the parties' agreement to arbitrate may be chosen by the parties." This is, of course, true enough, but the case does not

shed any light on which law was, in fact, "chosen by the parties" in this case. In sum, neither of the authorities Renard cites support his argument that the physical location of the arbitration hearing is somehow relevant in determining choice of law.

Finally, Renard maintains that application of the FAA to his case circumvents the WFDL. (Docket #15 at 4-7). Renard relies primarily on an opinion and order from Magistrate Judge Stephen Crocker in the Western District of Wisconsin: *Wins Equipment, LLC v Rayco Mfg., Inc.*, 668 F.Supp.2d 1148 (W.D. Wis. 2009). Unfortunately for Renard, Magistrate Crocker's reasoning does not support his argument. First, in that case, the court considered a motion to transfer pursuant to a forum selection clause in the parties' contract. 668 F.Supp.2d at 1148. One of the many arguments before the court was that the forum selection clause was contrary to Wisconsin state public policy as expressed in the WFDL. *Id.* at 1152. Magistrate Crocker's analysis on the issue is unhelpful to Renard because forum selection and choice of law are treated differently in the WFDL. The WFDL explicitly provides that a dealer may bring suit under the WFDL in "any court of competent jurisdiction." Wis. Stat. § 135.06. The WFDL further provides that any contractual provision that purports to vary the terms of the WFDL is void. Wis. Stat. 135.025(3). Taking these two provisions together, Magistrate Crocker reasoned that the forum selection clause may violate the WFDL because it limits the dealer's right, as specified in the WFDL, to his or her forum of choice. 668 F.Supp.2d at 1153. With regard to arbitration, the WFDL contains no similar provision restricting the parties from agreeing to a particular choice of law or from agreeing to arbitrate pursuant to a particular set of laws. Thus, the reasoning of *Wins Equipment* and the other forum

selection clause cases Renard cites do not mandate the application of the WAA in this case.

The court is thus unpersuaded by Renard's argument that the WAA's review provisions, including the expansive manifest disregard of law standard, apply. As Ameriprise shows, the parties' Franchise Agreement specifies that any arbitration will be governed by and enforced under the terms of the FAA. (Docket #8 at 7). The court thus proceeds within the narrow confines of review provided by the FAA.

3.     Renard's Petition to Vacate the Award

Renard argues that the arbitration award must be vacated for three reasons: first, because the arbitrators exceeded their powers in denying Renard's WFDL and intentional tort claims; second, because the award was procured by fraud due to Ameriprise's misstatement of fact and law; and third, because Renard was prejudiced when the arbitrators refused to keep the record open to allow Renard to offer additional evidence. (Docket #1-1; Docket #15 at 20-32). The court addresses each in turn.

   3.1     Scope of the Arbitrators' Powers

Renard first argues that the arbitrators exceeded their powers when they manifestly disregarded the WFDL and Minnesota common law[2] when they denied his WFDL and intentional tort claims, respectively. (Docket #15 at 20). A court reviewing an arbitration award may vacate the award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). In determining whether the arbitrators

---

[2] As stated above, the Franchise Agreement contained a general choice of law provision stating that Minnesota law governs the contract. The parties do not dispute that Renard's intentional tort claims fall under this choice of law provision.

exceeded their powers, the court employs a very narrow review. As the Seventh Circuit has articulated, "[j]udicial review of arbitration awards is tightly limited; perhaps it ought not be called 'review' at all." *Baravati v. Josephthal, Lyon & Ross, Inc.*, 28 F.3d 704, 706 (7th Cir.1994). The court further explained:

> By including an arbitration clause in their contract the parties agree to submit disputes arising out of the contract to a nonjudicial forum, and we do not allow the disappointed party to bring his dispute into court by the back door, arguing that he is entitled to appellate review of the arbitrators' decision.

*Id.* (citations omitted). Thus, the court does not analyze whether the arbitrators erred in their decision; "neither error nor clear error nor even gross error is a ground for vacating an award." *IDS Life Ins. Co. v. Royal Alliance Assoc., Inc.*, 266 F.3d 645, 650 (7th Cir. 2001). Instead, review is limited to the question of whether the arbitrators "violated the agreement to arbitrate, as by […] exceeding their powers, etc.—conduct to which the parties did not consent when they included an arbitration clause in their contract." *Wise*, 450 F.3d at 269.

The parties went before the arbitrators for resolution of their questions of whether Renard breached his promissory notes, and whether Ameriprise breached their contract, violated the WFDL, and violated common law. Renard does not argue that these questions fell outside their agreement to arbitrate, and for good reason: the Franchise Agreement's arbitration clause is broad, encompassing "any dispute, claim or controversy." Instead, Renard argues that the WFDL mandates certain notice requirements, and that Ameriprise's admitted noncompliance with those notice requirements must result in judgment in his favor. (Docket #15 at 20-21). The question before this court is not whether the arbitrators correctly interpreted the law—for legal

error is not a sufficient basis for vacating an arbitration award—but instead, the question before the court must be phrased as: did the arbitrators interpret the law in determining their award? The court concludes that they did. At arbitration, Renard provided the above-described interpretation of the WFDL's requirements. Ameriprise responded that it was within its rights to immediately terminate Renard based on his alleged violations of federal securities laws, because Ameriprise's responsibilities under those securities laws preempt any notice requirements found in the WFDL. The record before the arbitrators supported findings that Renard solicited sales of leveraged and inverse ETF's, and then falsely marked those orders as unsolicited in his reports. Ameriprise maintained that these inaccurate reports violated multiple provisions of the Securities Exchange Act, and that immediate termination was called for because Renard's actions left Ameriprise potentially exposed to liability. The record also contained testimony from Renard's WFDL expert opining that Ameriprise was required to comply with the WFDL notice requirements "unless the–doing so would be in violation of federal statute." Thus, the court concludes that the award was the result of interpretation of law and evidence before the arbitration panel, as the record contained evidence in support of their award. Additionally, Renard has not identified anything in the record showing that the arbitrators' decision was based on something other than the evidence and argument in the record. The court thus finds that the arbitrators could have agreed with Ameriprise's reading of the WFDL "without taking leave of their senses," *Wise*, 450 F.3d at 270, and did not exceed their authority in reaching their award.

Renard also asserts that the arbitrators exceeded their authority when they denied his claims for intentional interference with prospective business

relations and conversion, both Minnesota common law causes of action. (Docket #15 at 21-22). However, Renard concedes that if his immediate termination was found to be justified, then he cannot prove either intentional tort claim. (Docket #29 at 11). The court agrees. Having concluded that the arbitrators did not exceed their authority in denying Renard's WFDL claims, the court likewise concludes that the arbitrators did not exceed their authority in denying his tort claims, for all the reasons stated above.

    3.2    Procurement By Fraud

Renard next argues that the court must vacate the arbitration award because it was procured by fraud. Renard alleges that Ameriprise's counsel knowingly misstated fact (by stating that Renard was a criminal who broke federal securities laws, when, in fact, Renard was not criminally charged) and law (by representing that the WFDL is preempted by federal securities laws).

The FAA provides that an award may be vacated if it was "procured by corruption, fraud, or undue means." 9 U.S.C. § 10(a)(1). To prevail on this argument, Renard must establish the alleged fraud by clear and convincing evidence. *Gingiss Intern., Inc. v. Bormet*, 58 F.3d 328, 333 (7th Cir. 1995). The term "procured by [ ] fraud" is not defined in the FAA, however, in the context of a motion brought under Rule 60 of the Federal Rules of Civil Procedure, the Seventh Circuit has defined "fraud on the court" as acts that "defile the court." *In re Gold 255, Inc.*, 652 F.3d 806, 80 (7th Cir. 2011) (citations omitted). There is some authority to support that, when reviewing an arbitration award, a court should require a showing of a greater level of improper conduct as a reflection of the limited power of judicial review of arbitration awards. *Dean Foods Co. v. United Steelworkers of America*, 911 F.Supp. 1116, 1124 (N.D. Ind. 1995) (*citing Pacific & Arctic Railway & Navigation Co. v. United Transportation Union*, 952 F.2d 1144, 1148 (9th Cir.

1991)). In this instance, the court need not determine how strong the showing of fraud must be because, on this record, Renard's arguments are so insubstantial they barely merit discussion.

With regard to the alleged misstatement of fact, Renard maintains that it constituted fraud on the tribunal for Ameriprise's counsel to refer to Renard as a criminal who violated federal securities laws because Renard was not charged with or convicted of violating the law.[3] (Docket #15 at 26). Renard cites no legal authority in support of his argument. In response, Ameriprise points out that Renard testified that he knowingly mismarked transaction tickets, that this behavior violated the law, and that it was permissible for Ameriprise to comment on the evidence in the record during its closing statement. (Docket #27 at 21). The court simply cannot conclude that Ameriprise's statements "defile[d] the court" so as to constitute fraud. First, as Ameriprise argues, closing arguments are not evidence, they are persuasion, and "counsel may make arguments reasonably inferred from the evidence presented." *United States v. Vargas*, 583 F.2d 380, 385 (7th Cir. 1978) (citations omitted). Ameriprise's statements had a basis in the evidence before the arbitration panel, and Ameriprise did not defile the court in encouraging the arbitrators to view that evidence in the light most favorable to it. Second, it is uncontested that Renard had the final word; if he believed that Ameriprise misconstrued the record or encouraged a deduction unsupported by the evidence, he had an opportunity to provide his perspective in his rebuttal argument.

---

[3]Ameriprise filed an expedited non-dispositive motion pursuant to Civil Local Rule 7(h) to supplement the record with documents indicating that FINRA suspended Renard for two years and fined him $60,000.00 for violating FINRA rules. (Docket #31). The court will deny the motion as moot, as the record that was before the arbitrators is sufficient to deny Renard's motion.

Regarding the alleged misstatement of law, Renard argues that Ameriprise represented to the arbitrators that cases cited in its closing argument directly held the WFDL to be preempted by federal law. (Docket #15 at 27). Ameriprise replies that it cited cases in support of its argument, and analogized the cases to the WFDL. (Docket #27 at 18). Again, Renard does not meet his burden of showing clear and convincing evidence of fraud. Rather, the record shows that Ameriprise utilized case law to support the legal holding it desired; it goes without saying that if there is no existing case law directly on point, counsel can only argue from analogy. Furthermore, as with the allegedly fraudulent representation of fact, Renard offered a rebuttal argument in which he had an opportunity to argue why Ameriprise's analysis was incorrect.

Having reviewed the record and the parties' arguments, the court cannot agree with Renard that the award was procured by fraud. Simply stated, Ameriprise's counsel was doing the job of an advocate and Renard has not provided clear and convincing evidence of anything rising to the level of fraud. Accordingly, the court will not vacate the award on this argument.

### 3.3 Arbitrator Misconduct

Renard's third and final argument urges the court to vacate the arbitration award because the arbitrators did not keep the record open to allow Renard to submit post-hearing briefs. (Docket #15 at 32). The FAA provides that an award may be vacated if "the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy…." 9 U.S.C. § 10(a)(3). However, as Ameriprise amply demonstrates, Section 10(a)(3) offers Renard no avenue for relief in this case because it provides

review when a party is prevented from offering *evidence*, and Renard does not argue that he wanted to provide further evidence, but rather that he wanted further opportunity to review and brief the law. (Docket #27 at 22). Indeed, his request to the arbitrator was for "a couple of days just to verify any law that may apply or—in addition to the one that we cited to." (Docket #10-3 at 75:22-24). Renard replies only that he would have put on further evidence if given the chance. (Docket #29 at 13).

The court will not vacate the award on this basis. First, it is obviously not in keeping with the letter or spirit of the FAA to vacate an award due to the arbitrators' refusing to hear more evidence when the parties never put that request to the arbitrators in the first place. Second, Renard provides no legal authority to support his argument that a failure to permit post-hearing briefing on the law warrants vacating the award.

For all the reasons explained above, the court will deny Renard's motion to vacate the arbitration award. Because he did not show entitlement to vacate the award, his motion for judgment notwithstanding the arbitration award will be, likewise, denied.

4.  Ameriprise's Motion for an Order Confirming the Award

Also before the court is Ameriprise's motion for an order confirming the arbitration award. (Docket #14). Under 9 U.S.C. § 9, a party to an arbitration proceeding may ask a United States District Court to enter judgment upon an arbitration award. Unlike petitions to vacate arbitration awards, petitions to confirm an arbitration award pursuant to 9 U.S.C. § 9 are "usually routine or summary." *Hasbro, Inc. v. Catalyst USA, Inc.*, 367 F.3d 689, 691-92 (7th Cir. 2004) (citation omitted). "With few exceptions, as long as the arbitrator does not exceed [her] delegated authority, her award will be enforced." *Id.* (citation omitted). Having concluded that Renard did not

demonstrate any frailty in the arbitration award, the court will, accordingly, grant Ameriprise's motion for an order confirming the award.

Ameriprise also requests that the court award post-judgment interest on the arbitration award, pursuant to FINRA Rule 13904(j), which provides that an award bears interest from the date of the award if the award was subject to a motion to vacate which was denied. (Docket #8 at 16-17). Ameriprise requests $52.19 in daily interest from the date of the award through the date of final judgment.[4] Renard does not contest Ameriprise's request. Accordingly, the court's judgment will include 323 days of interest, in all totaling $16,909.56.

5.  Conclusion

By virtue of the parties' agreement to arbitrate their dispute, the arbitrators were authorized to render a decision regarding Ameriprise's claim and Renard's counterclaims. The arbitrators did exactly that. They might have been correct or they might have been incorrect, but they exercised the powers they were given. Therefore, their award will be confirmed, and judgment will be entered accordingly.

Accordingly,

---

[4] FINRA Rule 13904(j) provides that interest shall be assessed at the legal rate established by the state in which the award was rendered. Wis. Stat. § 815.05(8) establishes that rate as "1 percent plus the prime rate in effect on the day judgment is entered, as reported by the federal reserve board in federal reserve statistical release." The prime rate on April 16, 2013 was 3.25%, so the total rate is 4.25%.

Multiplying the amount of the award, $448,200.00, by the 4.25% interest rate yields $19,048.50 in annual interest. Dividing that figure by 365 days in the year, yields $52.19 in daily interest.

IT IS ORDERED that Ameriprise's motion and application for an order confirming the April 15, 2013, arbitration award (Docket #7) be and the same is hereby GRANTED;

IT IS FURTHER ORDERED that Renard's motion to vacate the arbitration award and motion for judgment notwithstanding the arbitration award (Docket #14) be and the same is hereby DENIED; and

IT IS FURTHER ORDERED Ameriprise's Rule 7(h) expedited non-dispositive motion to supplement the record (Docket #31) be and the same is hereby DENIED as moot.

The clerk of court is instructed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 6th day of March, 2014.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge